Dear Mayor McCoy:
As Mayor of The City of Mansfield, you have formally requested an Attorney General Opinion on the following issue:
 Who is responsible for paying the costs of housing a juvenile, already in the state`s custody, who is sent to a juvenile detention facility by a district court judge when the detention was not requested by the arresting agency or municipality and the municipality has no jurisdiction to handle juvenile cases?
In response to your inquiry on the issue stated above, La. Ch. C. art. 897 provides for the disposition after adjudication of a felony-grade delinquent act committed by a juvenile. Pursuant to La. Ch. C. art. 302, "district courts, except where a separate juvenile court with exclusive original juvenile jurisdiction is established by law, shall have original juvenile jurisdiction for their parish". Moreover, a mayor`s court is prohibited from exercising jurisdiction over juvenile matters. See La. Ch. C. art. 116(4), 302; Op.Atty.Gen. No. 96-116. In the instant case, The City of Mansfield`s Mayor Court has no jurisdiction over the juvenile that committed the felony offenses. Furthermore, even if there was no request by the City of Mansfield for the juvenile to be held in custody, the district judge has authority to adjudicate the two counts of burglary charged against the juvenile along with determining the disposition after the adjudication of the matter.
Under La. Ch. C. art. 897, after adjudication of a felony-grade act by a juvenile expect for first degree murder, second degree murder, aggravated rape, aggravated kidnapping, or treason, a felony-grade delinquent act; "the district court may commit the child to the custody of a private or public institution or agency licensed under state law". Under this authority, Ware Correctional Facility is a proper place for the district judge to commit the juvenile in the present situation. Ware Correctional Facility is a state funded facility where juveniles are sent from DeSoto and surrounding parishes.
In a previous opinion, Op.Atty.Gen., No. 92-293, this office determined when a juvenile is arrested by a parish law enforcement officer, charged with a felony offense, and assigned by a parish district judge to a regional juvenile facility, it is appropriate for the local governing authority to be charged with the cost of housing such juvenile. In the present case, the local governing authority should be DeSoto Parish, not the City of Mansfield. See also. Op.Atty.Gen. No. 91-425, cost incurred subsequent to adjudication should be incurred by the juvenile`s parents or the Louisiana Department of Public Safety and Corrections depending upon the court`s disposition of the case.
Considering the facts submitted in your request, this office is of the opinion that the local parish governing authority or the Louisiana Department of Public Safety and Corrections should be responsible for paying the costs of housing a juvenile already in the state custody who is ordered sent to a regional juvenile detention facility by a district court judge. Therefore, the City of Mansfield should not be responsible for the charges of housing the juvenile.
 Very truly yours,
 CHARLES C. FOTI JR. ATTORNEY GENERAL
 BY: _______________________ MATTHEW B. DERBES ASSISTANT ATTORNEY GENERAL
 MBD/ry/jy
OPINION NUMBER 91-425 Honorable Johnny Marino Attorney General of Louisiana — Opinion. January 10, 1992
 46-A Fees Costs 57-A Juveniles 64 Parishes
The parish general fund is obligated for paying per diem expenses incurred by detaining juveniles in regional facilities during pre-adjudication detention. Costs incurred post-adjudication would be the responsibility of the parents or the Louisiana Department of Public Safety and Corrections, depending upon the court`s disposition in the matter. Transportation costs prior to adjudication would generally be a parish expense to be paid from whatever fund the local governing body designates. Expenses incurred by the home incarceration of juveniles is now voluntarily being paid by the Louisiana Department of Public Safety and Corrections, Office of Youth Development.
The Honorable Johnny Marino Sheriff, St. Charles Parish P.O. Box 426 Hahnville, Louisiana 70057
Dear Sheriff Marino:
Your request for an Attorney General Opinion was forwarded to me for research and reply. As I understand it, your questions are as follows:
 (I) Is the criminal court fund or the parish general fund obligated for paying per diem expenses incurred by detaining juveniles in regional facilities?
 (2) Which agency is responsible for paying costs incurred by transporting juveniles?
 (3) If a district court assigns a juvenile to home incarceration, which agency is responsible for the costs thereby incurred?
In response to your first question, Attorney General Opinion (A.G.O.) No. 81-411-A states that the local governing authority, not the district court, is responsible for all costs associated with the detention of juveniles prior to their adjudication as delinquent, a child in need of care, or a child in need of supervision.[1] Therefore, based upon this opinion, the police jury would be responsible for any charges arising from the pre-adjudication detention of juveniles in regional facilities, and thereby the expenses would be paid by the parish general fund.
Costs incurred following the adjudication of juveniles is a different matter.[2] A juvenile court has a wide range of options when placing a juvenile subsequent to his adjudication. See La. C.J.P. arts. 83 and 84. Under La. R.S. 13:1582, the parents of a child committed by a court to non-parental custody may be required to pay all or a portion of the child`s expenses, according to the parents` ability to pay.
However, when the Louisiana Department of Public Safety and Corrections accepts custody of a child pursuant to a court order, that agency has the sole authority to make treatment decisions for that child. See La. R.S. 13:1580. Moreover, the Department of Public Safety and Corrections must pay for the maintenance of any child "held in a local institution or facility due to the inability of the department to accept the child" as outlined in La. R.S. 46:1906. The department has a broad mandate to coordinate all services consisting of the management and operation of state institutions providing treatment for delinquents and children in need of supervision. See La. R.S. 46:1905 and La. R.S.46:1910.
In regards to your second question as to which agency is responsible for paying for the transportation costs of juveniles, no statutory provision could be found which specifically provides for reimbursement of these expenses.[3]
Parish government is generally responsible for any expenses involving juvenile detainees above and beyond that covered by state agencies. As to which particular parish fund is obligated for any particular expense appears to be a question that is resolved individually by each local governing authority. Thus, in answer to your second question, the local governing authority would be responsible for the transportation costs of juveniles, but which parish fund actually pays the expenditure is left up to the discretion of that governing body.
Finally, your third question deals with the expenses incurred should a court place a juvenile under home incarceration. Again, there is no statutory provision answering this question. However, Beth Meng of the Office of Youth Development of the Louisiana Department of Public Safety and Corrections informed our office that at this time her agency pays for this expense. For further information about the responsibilities of the Office of Youth Development, you should contact Ms. Meng by calling 504-342-2655.
In conclusion, based upon A.G.O. No. 81-441-A, this office is of the opinion that the parish general fund and not the criminal court fund is responsible for paying the per diem charges incurred by housing juveniles prior to adjudication. Costs incurred subsequent to adjudication would be incurred either by the juvenile`s parents or the Louisiana Department of Public Safety and Corrections, depending upon the court`s disposition of the case. Further, costs of transporting juveniles generally fall upon the local governing authority to be paid from whatever fund it so chooses absent any contrary statutory provision. Finally, while not statutorily required, the Office of Youth Development is now paying costs involving the home incarceration of juveniles.
I hope this opinion satisfactorily answers your questions, but should you need any further assistance, please do not hesitate to call. I realize you submitted your opinion request some time ago but staff and time limitations prevented an earlier reply. I appreciate your patience in this matter.
With kind regards, I am
 Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 ____________________ KATHLEEN E. PETERSEN Assistant Attorney General
 KEP/PA/bb-2082e
[1] A.G.O. No. 81-411A recalled A.G.O. No. 81-411, which had erroneously concluded that a district court through the criminal court fund was responsible for the pre-adjudication detention costs of juveniles.
[2] Parishes have the responsibility to establish juvenile detention homes if so desired, although state subsidies are available to assist parishes in operating community-based youth service programs.
[3] Louisiana law does provides for which agency is responsible for transporting the juveniles. Under La.C.J.P. art. 34(C)(3), a "peace officer or an appropriate representative of the arresting agency shall have the authority and responsibility to transport the child to the appropriate juvenile detention center when required. . . ." Furthermore, La. C.J.P. art. 37(C)(2) provides that if continued custody is required prior to adjudication, again "the appropriate representative of the arresting agency shall be responsible for transporting the child" back and forth to any hearings and to and from the juvenile detention facility to which he may be assigned.
OPINION NUMBER 92-293 Honorable David M. Newell Attorney General of Louisiana — Opinion. May 12, 1992
 15 COURTS 46-A FEES COSTS 57-A JUVENILES
LSA-R.S. 46:51; 46:1905; 46:1931; Const. Art VI Section 14C (1974), Art. 34 of Code of Juvenile Procedures.
The local governing authority must bear the expense of placing juvenile offenders in a juvenile facility located in another parish. I the instance where the juvenile is charged through the district court, the parish police jury is responsible for the expense.
Honorable David M. Newell Assistant District Attorney Second Judicial District Claiborne Parish P. O. Box 26 Homer, LA 71040
Dear Mr. Newell:
We are in receipt of your opinion request under letter dated April 15, 1992 and the request has been assigned to me for research and reply. The issue presented for determination is whether the municipality or the parish police jury is responsible for housing costs associated with the detention of a juvenile placed in a facility outside the parish.
The facts related in your letter and our telephone conversation indicate that a Town of Homer juvenile was arrested by a parish police officer for a felony offense occurring in the Town of Homer and placed by a district judge in the Bossier Parish Juvenile Detention Center pending adjudication. A dispute has arisen between the Town of Homer and the Claiborne Parish Policy Jury over which agency must bear the expense of the juvenile`s placement in the facility.
This office has previously considered the issue of whether a juvenile court would bear the responsibility for this cost over the police jury. This office concluded that the police jury was the proper agency to be charged with the expense. In Attorney General Opinion Number 81-411-A, the author noted statutory authority for various governing authorities to engage in the operation of juvenile detention centers, citing LSA-R.S. 46:51, LSA-R.S. 46:1905, LSA-R.S. 46:1931, and LSA-Const. Art. VII, Section 14C (1974). The author stated:
 "When the juvenile court has rendered its decision, it does not execute its decision, but relies upon an executive officer such as the sheriff to perform and carry out the judgment. Inasmuch as the law provides that a local governing authority is vested with the power to establish and operate juvenile detention facilities, it is our conclusion that the local governing authority must bear the expense of placing a juvenile offender in a juvenile detention center located in another parish where no such center is available in the parish of the juvenile court`s domicile." (Emphasis added).
The facts related to me indicate that the juvenile was arrested by a parish law enforcement officer, charged with a felony offense, and assigned by a Claiborne Parish district judge to a regional juvenile facility outside Claiborne Parish, as required by Article 34 of the Code of Juvenile Procedure. The facts do not indicate that the juvenile was a prisoner of the municipality, and therefore we do not find the municipality as the appropriate local governing authority to be charged with this expense. Based on A.G.O.N. 81-411-(A), we again affirm that it is the responsibility of the local governing authority, in this instance, the Claiborne Parish Police Jury, to pay the bill owing to the Bossier Parish Juvenile Detention Center. We enclose for your review a copy of Attorney General Opinion Number 81-411-(A) and the more recently released Attorney General Opinion Number 91-425, which reflects a similar conclusion.
We hope this interpretation is helpful. Should you need further assistance regarding this matter, please contact our office.
 Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY:___________________ KATHLEEN E. KILPATRICK Assistant Attorney General
 RPI/KLK/ams 0075E
OPINION NUMBER 96-116 The Honorable John F. Johnson Attorney General of Louisiana — Opinion. April 9, 1996
 15 — COURTS 16 — CRIMINAL LAW — CRIME AND OFFENSES
La. Const. art. V § 19, La. Const. art v. § 9, La. C. Cr.P. art. 595, La. Ch. C. art. 116, La. Ch. Art. 302, La.R.S 13:1894.I, La.R.S.14:98, La.R.S. 14:143, 1983 La. Acts, No. 531 § 1.
A mayor`s court is prohibited by statute from exercising jurisdiction over prosecutions for driving while intoxicated or juvenile matters. In addition, a municipality cannot enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute.
The Honorable John F. Johnson District Attorney Seventh Judicial District Court Post Office Drawer 6000 Harrisonburg, LA 71340
Dear Mr. Johnson:
Your request for an opinion concerning the jurisdiction of Mayors` Courts has been forwarded to me for research and reply. Specifically, you have asked the following questions:
 1. Does La. R.S. 13:1894.1 prohibit a mayor`s court from adjudicating an offense under La. R.S. 14:98 or an equivalent local ordinance?
 2. Does a mayor`s court have any jurisdiction over juvenile matters?
 3. May a municipality enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute; and if so, does a prosecution by one governmental entity bar subsequent prosecution by the other governmental entity?
The first issue to be addressed is whether a mayor`s court may properly exercise jurisdiction over prosecutions for driving while intoxicated. Regardless of whether the criminal offense is charged under state statute (La. R.S. 14:98) or local ordinance, the result remains the same: A mayor`s court has no jurisdiction over DWI prosecutions. Under La. R.S. 13:1894.1(B), mayors` courts have been clearly divested of authority in such cases. This statute provides, in pertinent part:
 "However, mayors` courts shall have no jurisdiction whatsoever over violations as provided for by R.S. 14:98, nor to the trial of offenses against municipal ordinances relative to prosecutions on charges of driving while intoxicated."
Thus, by the explicit provisions of La. R.S. 13:1894.1, mayors` courts remain wholly without authority to entertain prosecutions for driving while intoxicated, regardless of whether they arise under state statute or local law.
Likewise, mayors` courts have no juvenile jurisdiction as well. Pursuant to Article V § 19 of the Louisiana Constitution, the Legislature enacted La. Ch. C. art. 302, defining the juvenile jurisdiction of Louisiana`s courts. Therein, specific reference is made to special juvenile courts, district courts, parish courts, and city courts; however, the statute makes absolutely no reference to mayors` courts. In addition, the Children`s Code itself expressly excludes mayors` courts from what it regards as a "court". The term "court" is defined by La. Ch. C. art. 116(4) to mean "any city, parish, district, or juvenile, or its judge, when exercising juvenile jurisdiction . . ."; but more importantly, for present purposes, article 116(4) also states that the term "does not include a judge of a mayor`s court or a justice of the peace." Thus, when read in tandem, these various provisions clearly indicate that mayors` courts also cannot exercise juvenile jurisdiction.
Where a mayor`s court is improperly exercising jurisdiction over DWI prosecutions or juvenile matters, the proper remedy for the aggrieved prosecutorial entity is to seek an injunction to permanently enjoin the mayor`s court from exercising such improper jurisdiction. Additionally, Louisiana law recognizes that there is no double jeopardy problem where the initial court had no authority. Under La. C.Cr.P. art. 595, "a person shall not be considered as having been in jeopardy in a trial in which: (1) the court was illegally constituted or lacked jurisdiction." Thus, there exists no double jeopardy bar to prosecutions for DWI and juvenile prosecutions previously handled by the mayor`s court.
The next issue to consider is whether a municipality may enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute. From the outset, there exists no doubt that a municipality may not provide for the punishment of a felony. La. Const. Art. VI § 9. However, controversy has long surrounded the possible concurrent jurisdiction of state law and municipal ordinances — i.e. the grey area where local misdemeanor laws and state felony statutes prohibit the same conduct.
Formerly, Louisiana`s courts had held that it was permissible for a municipality to enact misdemeanor ordinances that mirror state felony statutes. State v. Suire, 319 So.2d 347 (La. 1975); see also State v.Foy, 401 So.2d 948 (La. 1981). Moreover, the courts also held that prosecutions by a municipality under their misdemeanor laws would bar any subsequent prosecution by the State because of double jeopardy.Id. The prosecutorial dilemma posed by such concurrent jurisdiction — the notorious "race to the courthouse" — evidenced a "need forlegislative attention to the problem of concurrent state and local police regulation under the 1974 Constitution." Suire at 351 (Tate, J. concurring) (emphasis added). Therefore, in 1983, the Legislature heeded the Supreme Court`s suggestion through passage of 1983 La. Acts, No. 531
§ 1.
This act provides for preemption by state law. Now codified at La. R.S. 14:143, it provides in pertinent part:
 No governing authority of a political subdivision shall enact an ordinance defining as an offense conduct that is defined and punishable as a felony under state law.
Nevertheless, the scope and constitutional ramifications presented by La. R.S. 14:143 remained unaddressed by the courts until 1995. However, in City of Baton Rouge v. Ross, 654 So.2d 1311 (La. 1995), the Supreme Court recognized La. R.S. 14:143 as the definitive resolution of the jurisdiction problem in favor of the State. In Ross, a municipal ordinance prohibiting drug traffic loitering was held expressly preempted by legislative enactment. The Supreme Court held that the purpose of La. R.S. 14:143 is to prevent local governments from passing criminal ordinances defining as a misdemeanor the "same offense" (as that term is understood in the double jeopardy context) otherwise proscribed by state felony statute. Id, at 1318. The Court found that such preemption is a constitutional exercise of legislative authority, even as it is directed at those local governments that function under a home rule charter. Accordingly, municipal ordinances defining a misdemeanor offense will be preempted by similar state felony statutes.
The Ross decision also clearly defines the preemption process — "preemption of a local ordinance under this statute [is] accomplished through a facial challenge of the ordinance as written, and not from one or more case-by-case adjudications based upon particular facts." Id. at 1321. Consequently, "if the ordinance, according to its plain language, presents a substantial risk that it will place a defendant in `jeopardy` so as to bar a subsequent state felony prosecution, that ordinance must fall." Id. The Court in Ross also identified exactly what municipal ordinances fall within the scope of La. R.S. 14:143 — "the statute is meant to preempt any penal ordinance which is sufficiently similar to a state felony statute as to constitute the `same offense` for double jeopardy purposes." Id.
Thus, a municipality may no longer enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute. Any conflicting municipal ordinance will be preempted by state statutes in accordance with La. R.S. 14:143. Accordingly, the Supreme Court`s decision inRoss supports the present difference with former opinions issued by this office regarding concurrent jurisdiction (e.g. Attorney General Opinion No. 94-399).
Therefore, it is the opinion of this office that a mayor`s court is prohibited by statute from exercising jurisdiction over prosecutions for driving while intoxicated or juvenile matters. In addition, a municipality cannot enact a misdemeanor ordinance that proscribes the same conduct as a state felony statute.
If our office can be of further assistance, please do not hesitate to contact us. With kindest regards, I remain
 Sincerely yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By:_____________________ Mary E. Hunley Assistant Attorney General